### MILLER v. STEELE.

(Circuit Court of Appeals, Sixth Circuit. May 15, 1907.)

No. 1,044.

1. WILLS—CREDITORS OF TESTATOR—ACTION AGAINST LEGATEE—FORM.

An action in the federal court against a legatee in his lifetime, in which action only a money judgment without discovery or accounting was asked, was properly brought at law under Rev. St. § 723 [U. S. Comp. St. 1901, p. 583], declaring that suits in equity shall not be sustained in United States courts in any case where a plain, adequate, and complete remedy may be had at law.

2. COURTS—FEDERAL COURTS—PROCEDURE—EFFECT OF STATE LAW—WITNESSES —COMPETENCY—TRANSACTION WITH PERSON SINCE DECEASED.

In a suit in the federal court against a legatee on a contract for services rendered testator in his lifetime, whether plaintiff was a competent witness should be determined by the federal law, and not by the law of the state where the suit was brought, or the law of the state where the services were performed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 925, 984.

Competency in federal courts, following state practice, see notes to O'Connell v. Reed, 5 C. C. A. 602, and Bank of California v. Cowan, 21 C. C. A. 278.]

3. WITNESSES—COMPETENCY—TRANSACTION WITH DECEDENT—ACTION AGAINST LEGATEE—STATUTES.

Rev. St. § 858 [U. S. Comp. St. 1901, p. 659], declaring that no witness shall be excluded because of interest, except that in actions by or against executors, administrators, or guardians neither party shall be allowed to testify against the other as to any transaction with or statement by testator, intestate, or ward, unless called to testify thereto by the opposite party, did not incapacitate plaintiff to testify in an action against a legatee for services rendered testator.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 653–657.]

4. WILLS—DEBTS OF TESTATOR—ACTION AGAINST LEGATEE—CONTRACT FOR SERVICES—RELATION OF PARTIES—INSTRUCTIONS.

In a suit against a legatee on testator's express contract to pay plaintiff for services rendered him, the court properly charged that the relation of the parties was a circumstance bearing on the probability of there being such a contract, and that, if the contract was not made, if plaintiff's relation to testator was that of his betrothed or future wife, and the services were rendered in that relation, she could not recover.

**5.** EVIDENCE—SUFFICIENCY AND WEIGHT OF EVIDENCE.

In a suit against a legatee on a contract for services between plaintiff and testator, it was not error for the court to refuse to charge that the proof of plaintiff's claim must be clear and unequivocal in order to entitle her to recover; a preponderance of the evidence being sufficient.

**6.** COURTS—FEDERAL COURTS—PROCEDURE—WRIT OF ERROR—SCOPE OF REVIEW —MOTION FOR NEW TRIAL.

The action of the federal court in refusing a motion for a new trial is not reviewable on a writ of error.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 937.]

**7.** TRIAL—VERDICT—AMENDMENT.

A verdict may be amended with reference to both matters of form and substance during the term, either by reference to the judge's notes taken at the trial, or by other satisfactory evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 791–801.]

**8.** SAME—INTEREST.

A petition, in an action against a legatee on an express contract between plaintiff and testator for plaintiff's services, alleged that testator died December 29, 1901, and prayed judgment for $21,000 and interest from that date. The jury returned a verdict finding the issues in favor of plaintiff and awarding her $21,000 and interest. *Held* that, the date of testator's breach of contract being fixed by his death, the court was justified in amending the verdict during the term by adding interest from that date.

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

Jacob Shroder, for plaintiff in error.

Frank W. Cottle, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This is an action at law prosecuted by the defendant in error, Mary L. Steele, to recover from the plaintiff in error a sum which she claims to be due her under a contract for services rendered to John M. Wilson, who died December 29, 1901, leaving a will whereby he bequeathed all his estate to Eliza B. Miller, the defendant below. Miss Steele and said Wilson were residents of the city of New York at the time when the contract is alleged to have been made and while the services were being rendered; the former being a teacher in the public schools, and the latter an inspector at the customs office in that city. He died at Cincinnati, while on a visit to Mrs. Miller, who was his sister. His will was probated in New York. The husband of Mrs. Miller was appointed sole executor, administered the estate, and turned over to Mrs. Miller the whole sum remaining thereof after paying debts and expenses; the sum received by her being about $70,000. The executor's accounts were settled in the Surrogate's Court, and he was discharged May 19, 1903. Mrs. Miller was and is a citizen of Ohio, resident at Cincinnati. This suit was brought in the Circuit Court of the United States for the Southern District of Ohio, July 5, 1905. It is founded upon certain provisions of the New York Code of Civil Procedure, giving a remedy to creditors of deceased persons who have not proved their claims during the course of ordinary administration, whereby they may

obtain satisfaction of their debts from legatees and other beneficiaries who have received assets of the estate.

In her petition the plaintiff (below) stated that she rendered the work, labor, and services for which she sues as nurse for said Wilson, who was an invalid, and "that at the time of and during the performance of the work, labor and services, above referred to, said John M. Wilson, now deceased, promised and agreed to pay this plaintiff therefor the sum of $25,000, in cash, or in securities of the value of $25,-000, and, in the event of his decease prior to such payment, he promised and agreed to make a testamentary bequest to plaintiff of such sum to be paid to her out of his estate, or to set aside securities of the value of $25,000, as plaintiff's property to be delivered to her upon his decease. That said plaintiff, in reliance upon said promise and agreement, fully performed such work, labor, and services on her part, but John M. Wilson, now deceased, failed to make any testamentary bequest to plaintiff of such sum or any part thereof, nor did he set aside securities of the value of $25,000 or any securities as plaintiff's property to be delivered to plaintiff upon his decease, nor has plaintiff received any payment or recompense for such services from John M. Wilson, now deceased, or from his estate, except that plaintiff has received the sum of $4,000 on account thereof." She then proceeds to state the making of the will, the death of the testator, the probate of the will, the administration, that the publication of notices to prove claims was unknown to her, and that the defendant as sole legatee had received the assets, which consisted of personal property amounting to $100,000. She thereupon prayed "judgment against the defendant for the sum of $21,000 and interest from the 29th day of December, 1901." The sections of the New York Code relied upon were sections 1837, 1838, and 1841. These, with sections 1839 and 1840, which are exhibited by the answer of the defendant read as follows:

"Sec. 1837. An action may be maintained as prescribed in this article against the surviving husband or wife of a decedent and the next of kin of an intestate or the next of kin or legatees of a testator to recover, to the extent of assets paid or distributed to them, for a debt of the decedent upon which an action might have been maintained against the executor or administrator. The neglect of the creditor to present his claim to the executor or administrator within the time prescribed by law for that purpose, does not impair his right to maintain such an action.

"Sec. 1838. An action, specified in the last section, must be brought, either jointly against the surviving husband or wife and all the legatees, or all the next of kin, as the case may be, or at the plaintiff's election against one of them only. But where a legacy is received by two or more persons jointly, they are deemed one legatee within the meaning of each provision of this article, relating to legatees.

"Sec. 1839. Where a joint action is brought as prescribed in the last section, the whole sum which the plaintiff is entitled to recover, must be apportioned among the defendants, in proportion to the legacy or distributive share, as the case may be, received by each of them; and the final judgment must award against each defendant separately the proportionate sum thus ascertained. The costs of the action, if the plaintiff is entitled to costs, must be apportioned in like manner; except that the expense of serving of summons upon each defendant must be taxed against him only, and one sheriff's fee for returning an execution may be taxed against each defendant against whom any sum is awarded.

"Sec. 1840. Where an action is brought against the surviving husband or wife only, or against one only of the next of kin or legatees, the sum which the plaintiff is entitled to recover, cannot exceed the sum which he would have been entitled to recover from the same defendant, in action brought as prescribed in the last section.

"Sec. 1841. If the action is brought against a legatee, or against all the legatees, the plaintiff must show, either, (1) that no assets were delivered by the executor or administrator of the decedent, to the surviving husband or wife, or next of kin; or (2) that the value of assets, so delivered has been recovered by some other creditor; or (3) that those assets, after payment of the expenses of administration and preferred demands, are not sufficient to satisfy the demand of the plaintiff; in which case, he can recover only for deficiency."

For the defendant a demurrer to the petition was filed on the ground, as therein assigned, "that this court is without jurisdiction at law of the cause set forth in the petition." The demurrer was overruled. The defendant thereupon answered the petition "without waiving her objection to the jurisdiction at law," admitting the death of Wilson, the making and probate of his will, the administration by the executor, her receipt of the assets as sole legatee, that the testator left no wife or children, and that, although he left next of kin, none of the assets came to them except those delivered to her. For her second defense she set out sections 1837, 1838, 1839, and 1840 of the New York Code, above mentioned, and concluded that "by reason thereof this court cannot take cognizance of this case on its law side." The making of the alleged contract between the plaintiff and Wilson was denied by the general denial of matters not admitted. Upon the trial evidence was adduced tending to show the making of the contract alleged in the petition and the rendition of the services as therein alleged. From the evidence it further appeared that, at the time when the services were rendered, the parties to the contract were engaged to be married at some future time, the date not being fixed, but depending on subsequent conditions, and that they lived in the same tenement, but on different floors, or in different rooms on the same floor, but not as husband and wife. There was evidence that he paid the rent for both, some of the time at least; but this was denied by the plaintiff. The plaintiff was permitted to testify in her own behalf, against the objection of the defendant, that she was incompetent, and an exception was duly taken. At the conclusion of the evidence sever l requests for instruction to the jury were presented by counsel for defendant, but only one of them need now be stated. This was as follows:

"If the relation between the plaintiff and John Wilson were as parties affianced or betrothed to each other, and if during the period of this relationship they were living in one household and as members of one family, and if during such relationship and mode of living the services claimed by plaintiff to have been rendered for Wilson were in fact rendered for him, in such case it is incumbent on plaintiff to establish her claim by clear and unequivocal proof of the existence of an express contract. In such case no claim can be allowed to rest on an implied contract. The contract must be an express one, which must be proven by clear and unequivocal proof; it is not sufficient to prove the existence of a contract or its terms by only a preponderance of the evidence. The court refused to give said special instruction, to which ruling of the court counsel for the defendant at the time excepted."

The court in its instructions to the jury, after observing that the engagement between the parties was not set up in the pleadings, but had "been brought into the case as one of the circumstances tending to throw light upon the contract which is set up and relied upon," said:

"Under this contract she was not the betrothed of Wilson; she was simply a servant. Now, the promise set up in the contract, if made with reference to making provision for her as his future wife, then such promise would not support the contract set up here; but if the promise was, as she claims it to be, a promise to pay her $25,000 for work and labor and services to an invalid, as his nurse, attendant, and companion, if the evidence satisfies you that that was the contract, and that he failed to perform it, and there is no question about that, he never did pay her $25,000, he made no provision for such payment in his will, and, so far as we are advised, he never set aside any securities to be delivered to her after his death, if that was the contract, and she performed it, then she would be entitled to recover the amount claimed in the petition, $21,000, it being admitted in the petition that $4,000 has been paid. But if the contract was not made, if her relation to him was that of his betrothed, his future wife, if that was the relation, and the services were rendered in that relation, then she would not be entitled to recover. In other words, if the purpose was to make some provision for her as his intended wife, especially in contemplation of his death, then no promise or undertaking of that kind would fall under this contract. Under this contract, she would not be entitled to recover upon any such promise. But if the promise was made under this contract, if she agreed to render service, and he agreed to pay her $25,000 for that service, irrespective of any relation existing between them as persons engaged to be married, then, as I have said, she would be entitled to recover."

The jury returned their verdict as follows:

"We, the jury, herein do find the issues joined in favor of the plaintiff, and that she be awarded $21,000 and interest."

A motion for a new trial was made and overruled, and judgment was thereupon entered. The judgment entry is as follows:

"On consideration whereof, the court, being fully advised in the premises, doth find that said motion is not well taken, and should be overruled, and that a judgment should be rendered on said verdict, including interest from December 29, 1901.

"It is therefore ordered and adjudged by the court that the motion of the defendant for a new trial be, and the same hereby is, overruled, and that the plaintiff, Mary L. Steele recover of the defendant, Eliza B. Miller, the sum of $26,817, together with her costs herein expended, taxed at $————, for which let execution issue, to all of which defendant Eliza B. Miller by her counsel excepts."

The assignments of error are very numerous. But counsel for the plaintiff in error have, for their own convenience and that of the court, summarized their points for argument in an easily managed form, a practice much to be commended. The complaint is of errors:

"(1) In the rulings of the court on the ground of jurisdiction presented in the various forms.

"(2) In the rulings of the court in the admission of evidence.

"(3) In the action of the court in refusing to give the special charges requested by the defendant below.

"(4) In the action of the court overruling the motion for a new trial.

"(5) In the judgment entered upon the verdict."

We will take them up in this order.

1. It is urged that the case of the plaintiff as stated in her petition was not cognizable at law, but was one exclusively of equity jurisdic-

tion. It should be admitted, as contended, that in the federal courts there has always been, and still continues to be, a settled, but not always clearly defined, line of distinction between cases at law and in equity, and there is a corresponding difference in the spheres of jurisdiction which the court exercises over them. It is generally true that cases of one character can not be tried in the jurisdiction appropriate to the other. The leading and dominant proposition is that, when the capacity of a court of law is sufficient to give a suitable remedy, that is the proper forum in which to try the cause and obtain the proper relief. The judiciary act (Rev. St. 723 [U. S. Comp. St. 1901, p. 583]) emphasized the rule when it declared, in section 16, that "suits in equity shall not be sustained in either of the courts of the United States, in any case where a plain, adequate and complete remedy may be had at law." The remedy may be inadequate because the procedure at law is too inflexible to suit the exigencies of the case, or because the relief which a common-law judgment can afford is not adaptable to the peculiar facts. When neither of these difficulties are in the way, there can be no reason for resorting to a court of equity. The decisions upon this subject are too numerous for an exhaustive citation. Some of them are: Boyce's Ex'rs v. Grundy, 9 Pet. 275, 9 L. Ed. 127; Hipp v. Babin, 19 How. 271, 15 L. Ed. 633; Parker v. Winnipiseogee, etc., Co., 2 Black. 545, 17 L. Ed. 333; Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501; Lewis v. Cocks, 23 Wall. 466, 23 L. Ed. 70; Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451; Drexel v. Berney, 122 U. S. 241, 7 Sup. Ct. 1200, 30 L. Ed. 1219.

There is a numerous class of cases where there is a concurrent jurisdiction in courts of law and equity. This has resulted largely from the extensions of the jurisdiction of the courts of law into the field formerly exclusively occupied by courts of equity, and in such cases the plaintiff may resort to either. See the observations of Mr. Justice Cowen in McCrea v. Purmont, 16 Wend. (N. Y.) at pages 465, 466, 30 Am. Dec. 103. And see Kennedy v. Gibson, 8 Wall. 498, 505, 19 L. Ed. 476.

In the present case the judgment sought was one for a sum of money which would be simply given or denied, according to the finding upon the issues. The proof would be the same in either court, whether of law or equity. No discovery was sought, nor was there any accounting required. It was not a case for contribution among defendants; the statute giving the right to proceed against a single legatee. And, indeed, there was but the one legatee who was answerable. The case of Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263, 27 L. Ed. 966, would seem to be a distinct authority for maintaining a suit at law in such circumstances. The mere fact that equity has jurisdiction of trusts, and that the fund sought to be reached is in the nature of a trust fund, does not of itself make it necessary to resort to a court of equity, or displace the force of the rule which denies a resort to a court of equity when the law affords a full, adequate, and complete remedy. That rule extends over all classes of cases when the condition stated exists. If, in a case involving a trust, there is a necessity for the employment of the functions of a court of equity,

such as, for an accounting, or for the marshaling of assets or for contribution of proportions by several defendants, or a conditional judgment must be made, or some personal act of the defendant is required, then a resort to that court should be had; but, where there is simply an obligation to pay a sum of money, there can be no objection to a suit at law for its recovery, notwithstanding it may have become due in consequence of trust relations. Thus, where an account has been stated between the trustee and the cestui que trust of the matters of the trust, so that nothing remains but to pay over the trust fund, an action at law will lie for its recovery; and it is a sufficient answer to a bill of the cestui que trust, for the settlement of the trust and payment of the balance by the trustee, that the accounts have been settled and the balance ascertained, and that there is a suitable remedy by an action at law. Bispham, Principles of Equity (4th Ed.) § 485; 2 Perry on Trusts, § 843; 1 Story's Eq. Jur. § 523; 2 Lewin on Trusts (Flint's Ed.) 898, note 1.

We are therefore of opinion that the objection to the jurisdiction of the case because it was an action at law was properly overruled.

2. The second point is made upon the ruling of the court concerning the competency of the plaintiff to testify in her own behalf. This question does not depend upon either the law of Ohio or of New York, but upon the law of the United States relative to that subject. By section 858, Rev. St. [U. S. Comp. St. 1901, p. 659], it is provided that:

"In the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is a party to or interested in the issue tried: Provided, that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court. In all other respects, the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty."

As is seen, this statute makes a party to the suit competent to testify unless the other party is an executor, administrator, or guardian. The courts have no authority to add others to the exception; nor can this be done by state legislation. White v. Wansey, 116 Fed. 345, 53 C. C. A. 634; Smith v. Township of Au Gres (C. C. A.) 150 Fed. 257; Hobbs v. McLean, 117 U. S. 567, 579, 6 Sup. Ct. 870, 29 L. Ed. 940.

The ruling of the court in this regard was therefore right.

3. In the preceding narration of occurrences during the trial, it is stated that the court was requested to give an instruction to the jury in relation to the character of the proof required to establish a liability for services rendered by one party to another while they are holding a family relation with each other, which request was refused by the court, and reference was made to the charge of the court upon that subject. The court said that the relation of the parties had "been brought into the case as one of the circumstances tending to throw light upon the contract which is set up and relied upon." The case was not tried upon the issue of a quantum meruit; and it was submitted to the jury by the court as one resting solely upon the al-

leged contract. ·The judge so states in his opinion on the motion for a new trial, and the bill of exceptions bears out that statement. The court was entirely right in stating that the relation of the parties was a circumstance bearing on the probability of there being such a contract. However, the court instructed the jury that:

"If the contract was not made, if her relation to him was that of his betrothed, his future wife, if that was the relation, and the services were rendered in that relation, then she would not be entitled to recover."

So that it would seem the court charged the substance of the request of counsel, except that it did not charge that the proof must be clear and unequivocal, and that a preponderance of proof would not be sufficient. For the reason above stated, namely, that the case was being tried and submitted upon the issue as to the existence of the contract, the request in this respect, as well as what was said in response to it, would seem to be rather "beside the mark," and more confusing than· helpful to the jury. With regard, however, to the latter part of the request, we more than doubt whether in such a case the law requires any other than that preponderance of proof which is required in all civil actions to maintain the issue. We are not aware of any reason for such an exception from the general rule, and, although such language ·has sometimes been employed by lawyers and judges, yet, as was said by Judge Campbell, in the opinion of the Supreme Court of Michigan in Watkins v. Wallace, 19 Mich. 57, where the court below had charged that fraud will not be presumed from slight circumstances, that the proof must be clear and conclusive, "juries cannot be expected to be familiar with the technical and stock phrases of the bench and bar; and,·as there is a well-settled popular understanding of the different degrees of proof required in civil and criminal trials as a basis of conviction, a jury instructed to act only on conclusive evidence could hardly fail to suppose they must disregard all balancing of evidence, and require a case absolutely free from doubt. "No such rule prevails in any civil case." And the judgment was reversed solely for that error in the charge. The relation of the parties is of itself one of the circumstances which a jury will weigh in estimating the probabilities. It goes into the scale to the credit of the party for whom it counts. But, if it and all the other circumstances in favor of that party conjoined still leave a preponderance of the testimony the other way, the result cannot be otherwise than that the preponderance should prevail.

4. The action of the court in refusing the motion for a new trial is not reviewable on a writ of error.

5. This question is whether the court was authorized to add the interest on the sum of $21,000 from the time of the death of the testator, Wilson, and include that in the judgment entered on the verdict. The objection is that the verdict in that regard was too uncertain to warrant the court in adding interest from that date. There can be no doubt that it is incompetent for the court to add interest to the sum found by the verdict without sufficiently definite data, to be found either in the verdict or elsewhere in some part of the record or the minutes of the trial to which reference may properly be made. The question, therefore, is whether the record and

the minutes of the trial (which the bill of exceptions shows were kept in full) contained matter from which the court could construe the meaning of the verdict with sufficient certainty. In discussing the power of the judge to amend the verdict, it is said, in 22 Encl. of Pl. & Prac. 974–5, that "it is undoubted that a verdict may be amended from data given in the verdict itself; or referred to in the pleadings or record of the case." And in Matheson v. Grant, 2 How. 263, 11 L. Ed. 261, where this subject was fully considered in the opinion by Mr. Justice Story, it was held that the verdict may be amended by reference to the judge's notes taken on the trial, or by any other clear and satisfactory evidence, and that the practice is a salutary one and in furtherance of justice. This power is not limited to matters of form while the court retains control of the judgment, although after the lapse of the term it is so limited. See the opinion of Mr. Justice Woodbury in Bank v. Moss, 6 How. 31, 12 L. Ed. 331. The bill of exceptions in this record states that it contains all the evidence given upon the trial. It also contains the judge's charge in full—from all which we are able to see what the issues were which were really contested, and what were the questions submitted to the jury. The verdict in this case itself awarded interest on the sum of $21,000. The petition prayed judgment for that sum and interest from December 29, 1901. The issues therefore covered that item, and the verdict stated that the jury found the issues joined in favor of the plaintiff. The verdict established the making of the contract and the breach of it by the testator. It was optional with him to pay the plaintiff the $25,000 in money or securities in his lifetime, or provide for it in his will. He had not paid the amount in his lifetime, and he committed the breach of the contract by not providing for the payment of the amount in money or securities. It is a general rule of law that interest is due and payable upon a contract for the payment of a fixed sum at a time which is certain, or will become certain by lapse of time, from the date when the contract should have been, but was not, performed. And this is so whether or not the obligation carried interest before maturity. 1 Am. Lead. Cases, Hare & Wal. note (4th Ed.) 506; 26 Cyc. 1473; Young v. Godbe, 15 Wall. 562, 21 L. Ed. 250; New Dunderberg Min. Co. v. Old, 97 Fed. 150, 38 C. C. A. 89; Jourolmon v. Ewing, 80 Fed. 604, 607, 26 C. C. A. 23.

And we think the court might have properly instructed the jury as matter of law that, if they should find for the plaintiff, they should add interest from the date when the contract was broken. In Young v. Godbe and New Dunderberg Co. v. Old, supra, the questions arose on error alleged in the giving of instructions to the jury to add interest from the time of the breach of the contract, and in each case the objection was overruled. In these circumstances, we are inclined to think that the court was warranted in giving the interpretation to the use of the word "interest" by the jury to mean from the time from which by law it ought to be reckoned, and, moreover, that the jury meant by that word the interest claimed by the petition, namely, interest from December 29, 1901.

The judgment will be affirmed, with costs.